**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JONATHAN HUSER and <br> STEPHEN WELCH; <br> on behalf of themselves and several classes, <br><br> Plaintiff, <br><br> v. <br><br> MIDLAND FUNDING LLC; MIDLAND <br> CREDIT MANAGEMENT, INC.; <br> and ENCORE CAPITAL GROUP, INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 17-cv-4490 <br> ) Judge Joan B. Gottschall <br> ) Mag. Judge Young B. Kim <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFFS' RESPONSE TO DEFENDANTS MOTION TO COMPEL ARBITRATION
OF PLAINTIFF HUSER'S CLAIMS**

Typically, when a class-action suit is brought against a debt collector, and the debt collector believes it may be able to force the plaintiff into individual arbitration, the motion to compel arbitration comes swiftly. Understandably, debt collectors faced with potential class liability want to get the class claims eliminated as soon as possible and not waste resources litigating in court or risk waiving any rights**.** Here, however, Defendants waited nearly a year and a half into active litigation to assert that Plaintiff Jonathan Huser's ("Huser") claims against them are subject to arbitration. Instead of taking diligent steps to enforce the alleged arbitration provision (which explicitly excludes claims against Defendants), Defendants decided to litigate Plaintiff Huser's claims by engaging in discovery, participating in multiple settlement conferences, and motion practice and attempting to invoke jury demand rights. That is, Defendants' motion comes only shortly after it chose to have the parties litigate whether the claims against them will be tried before a jury or this court. (Dkt. 91). Only after this Court denied Defendants' untimely jury demand, did

Defendants decide they would rather take their chance with arbitration than with this Court. This Court should deny Defendants motion to compel arbitration of Plaintiff Huser's claims because (1) Defendants have waived any arbitration right they might have had by actively participating in the case and (2) the arbitration agreement upon which they rely explicitly excludes the claims against Defendants and they cannot enforce it.

## **PROCEDURAL HISTORY**

Plaintiff Huser was first introduced in this case on July 20, 2017 in Plaintiffs' First Amended Complaint. ("FAC"). Plaintiff Huser was included as a new lead Plaintiff in the case and alleges Defendants violated the Fair Debt Collection Practices Act, specifically, §15 U.S.C. 1692e, 1692e(2) and 1692e(10) by sending a form letter in an attempt to collect a credit card debt beyond the applicable statute of limitations, which letter offered a settlement or a payment plan and did not state that any payment may restart the statute of limitations. (Dkt. 22). Defendants answered the FAC on August 30, 2017. (Dkt. 40). Plaintiff Huser promptly served written discovery requests on October 20, 2017, to which Defendants responded on December 8, 2017.

The first indication the Defendants made that they may seek to arbitrate Plaintiff Huser's claims was in an email dated April 11, 2018, 9 months after Huser was added to the litigation and after Defendants responded to Plaintiffs' discovery requests. (Exhibit 1, April 11, 2018 Email and Attachment). Defense counsel's email attached only a Credit Card Agreement for a Juniper AirTran Airway cardmember agreement that is dated September 19, 2005. Defendants collection letter upon which Plaintiff's claims are based, identifies the original creditor as Barclays Bank Delaware and Plaintiff's application for credit which identified the card as "Barclaycard" is dated January 27, 2006 (Exhibit 2, March 1, 2017 Letter; Exhibit 3, January 27, 2006 Application).

2

Further, based on Defendants' records, the credit card account was not charged off until November 27, 2009.  (Exhibit 4, Huser Purchase Account File).

No affidavits were produced or attached explaining any of these discrepancies and it is entirely unclear how a Juniper Credit Card Agreement dated September 19, 2005 would relate to either the (1) January 27, 2006 Barclaycard application for credit which was not charged off until November 27, 2009 or (2) the March 1, 2017 Collection Letter which identifies the original creditor as Barclays Bank Delaware.

In response, on April 12, 2018 Plaintiffs' counsel promptly requested proof that the alleged arbitration clause applied to Plaintiff Huser's account. (Exhibit 5, April 11-12 Email Thread). Defendants never responded with any proof, affidavit or otherwise, that the Juniper Card Agreement had any relationship with the Barclays account for which they were attempting to collect.  In fact, Plaintiff's counsel made several more requests, all of which went ignored, until the present motion was filed on December 17, 2018, nearly 8 months later.

During this time, Defendants appeared to have abandoned their threat of arbitration by actively litigating Plaintiff Huser's claims.  On July 5, 2018, Plaintiff Huser filed a motion in *Pierre v. Midland Credit Management, Inc.*, No. 16-cv-2895 (Dkt. 127) to reassign his case and three others to Judge Lienenweber for the purposes of holding a consolidated settlement conference in four related cases.  The parties engaged in settlement discussions between July and September 2018. On July 30, 2018, Defendants served Plaintiff Huser with a Rule 68 Offer of Judgment, offering to have a "judgment be entered against them," in exchange for a $5,000 payment to Plaintiff Huser.  (Exhibit 6, Huser Rule 68 Offer).

Additionally, the parties engaged in two settlement conferences, conducted several Rule 37 conferences to enforce discovery, and Defendants unsuccessfully attempted to have Plaintiff's

claims tried before a jury. Specifically, on August 23, 2018, in response to Plaintiff's amended complaint adding Plaintiff Welch as an additional Plaintiff, Defendants attempted to make an untimely jury demand. This court rejected Defendant's jury demand as untimely. (Dkt. 91).

This court granted Plaintiffs' motion to strike the jury demand as untimely on November 2, 2018. (Dkt. 91). Defendants then waited nearly two *additional* months to file this motion to compel arbitration of Plaintiff Huser's claims. In total Defendants waited nearly 17 months since Huser was added to this litigation to attempt to compel his claims to arbitration based on an arbitration provision which explicitly excludes claims against Defendants, unless Plaintiff chose to file those claims in arbitration (Exhibit 7, Juniper Card Agreement) ("This arbitration agreement applies to all Claims now in existence or that may arise in the future *except* for Claims by or against *any unaffiliated third party to whom ownership of your Account may be assigned* in which case this arbitration agreement will apply *only if* you or the third party *chose arbitration*") (Emphasis added).

## ARGUMENT

In deciding a motion to compel arbitration, under the Federal Arbitration act, courts may compel arbitration if the following three elements are shown (1) a written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement and (3) a refusal to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005).

"Courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Restaurant,* 133 S.Ct. 2304, 2309 (2013). Whether a binding arbitration agreement exists is determined under principles of state contract law" and "[u]nder Illinois law, where the language of a contract is plain, the agreement is enforced as written. *Zacher v. Comcast Cable Commc'ns LLC*, No. 17 CV 7256, 2018 WL

3046955, at *1 (N.D. Ill. June 20, 2018) (Citing *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *AT&T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643 (1986) (internal citation omitted). "[C]ourts must place arbitration agreements on equal footing with other contracts and enforce them according to their terms." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012)

Among the relevant rules of contract construction are that ambiguities are resolved against the drafter or user of a form document, *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995), and that "we are not free to rewrite into a contract conditions the parties did not insert by adding or excising terms under the guise of construction," *Bank of New York Mellon Trust Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 307 (2d Cir. 2016).

Arbitration agreements "must not be so broadly construed as to encompass claims and parties that were not intended by the original contract." *Mounts v. Midland Funding, LLC*, 257 F. Supp. 3d 930 (E.D. Tenn. 2017) *citing Thomson-CSF, S.A. v. Am. Arbitration Association*, 64 F.3d 773, 776 (2d Cir. 1995).

A motion to compel arbitration is "is treated as an assertion that the court lacks subject-matter jurisdiction, [thus] the court may consider exhibits and affidavits related to the issue of arbitration agreements." *Webb v. Midland Credit Mgmt., Inc., No*. 11 C 5111, 2012 WL 2022013, at *2 (N.D. Ill. May 31, 2012). As a result of the dispositive nature of the motion "[t]he court must consider the non-moving party's evidence and construe all reasonable inferences in the light most favorable to the non-moving party." *Id.*

**I. DEFENDANTS HAVE WAIVED THE RIGHT TO ARBITRATE**

The right to arbitrate, like any other contractual right, can be waived. *See St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods., Co.*, 969 F.2d 585, 590 (7th Cir. 1992). A party waives the right to arbitrate when it "determine[s] that, considering the totality of the circumstances, a party acted inconsistently with the right to arbitrate." *Kawasaki*, 660 F.3d at 994. "While several factors are considered in the waiver analysis, diligence or the lack thereof should weigh heavily in the decision." *Id.* (citing *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995)). Other factors to be considered include "whether the allegedly defaulting party participated in litigation, substantially delayed its request for arbitration, or participated in discovery," and though this Court is *not* required to find that the non-waiving party was prejudiced by its reliance on the conduct of the waiving party, "it is a relevant factor." *Id.* (citing *St. Mary's*, 969 F.2d at 589-91).

### A. Defendants Abandoned Any Right to Arbitrate Plaintiff Huser's Claims by Choosing to Litigate Them in This Court

Defendants' motion to compel arbitration should be denied because Defendants were not diligent in pursuing any claimed arbitration rights and actively chose to litigate Plaintiff Huser's claims in this Court. "[D]iligence or a lack thereof should weigh heavily in the court's determination of whether a party implicitly waived its right to arbitrate." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008). In assessing a party's diligence, courts must answer the following question: "*did that party do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?*" *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 756 (7th Cir. 2002) (emphasis in the original) (quoting *Cabinetree of Wisc. Inc. v. Kraftmaid Cabinetry*, 50 F.3d 388, 391 (7th Cir. 1995). Here, the answer is plainly no.

This is not the first time that Defendants have "delayed" in asserting procedural rights before this Court. In this Court's opinion striking Defendants' untimely jury demand, this Court held there was no adequate justification for "the 13-month delay and defendants' representations that settlement-related considerations animated their decision not to demand a jury trial, the delay must be deemed prejudicial to plaintiffs here because defendants' posture on a jury trial in this action may have affected those discussions…" (Dkt. 91 Pg. 9-10). The Court further noted that "Defendants have experienced counsel quite capable of preparing for these contingencies and, given that they do not even say that they were inadvertent in failing to demand a jury trial, the timing of their jury demand here smacks of brinksmanship." (Dkt. 91, Pg. 9). The same can be said with Defendants' current litigation tactic.

Defendants waited nearly a year and a half from when Plaintiff Huser was first added to the litigation to file a motion to compel arbitration. Defendants waited until after the parties had engaged in discovery, conducted settlement conferences, engaged in motion practice, and after Plaintiff rejected the Defendants' offer of judgment and this Court denied their untimely jury demand. Defendants delay in asserting arbitration is prejudicial to Plaintiff Huser for the same reasons outlined in this court's opinion on the motion to strike.

The party asserting arbitration does not act diligently when there are significant delays between the commencement of the litigation, the private demand for arbitration, and the filling of a motion to compel arbitration. In *Smith v. GC Servs. Ltd. P'ship* the appellant did not privately demand the appellee arbitrate her claim until eight months after the appellee filed her case. 907 F.3d 495, 499-500 (7th Cir. 2018). After the appellee promptly refused to arbitrate the dispute the appellant waited another five months until filing the motion to compel arbitration. *Id.* The Seventh Circuit held both of appellant's explanations "entirely inadequate." *Id.* The appellant argued "that

7

the initial eight-month delay occurred because the arbitration agreement was in Synchrony Bank's possession and so GC Services was unaware of [its] existence." *Id.* The court soundly dismissed this excuse:

> The initial suggestion that GC Services—a sophisticated debt collection agency—would be unaware that credit card agreements routinely include arbitration agreements is suspect. Such provisions are commonplace, and GC Services should have investigated whether Smith's contract contained one. What's more, federal regulations require credit card issuers to post their credit card agreements online. See 12 C.F.R. § 1026.58(d). Even if Synchrony Bank was nonresponsive to inquiries, GC Services could have found the agreement through a routine internet search.

*Id.* The appellant did not act diligently in determining that there was an arbitration agreement. As a result, the court was unwilling to excuse this delay without justification.

In this case, Mr. Huser was first added to the litigation on July 20, 2017 (Dkt. 21). Defendants filed their answer on August 30, 2017, only asserting a general, boilerplate, and unsupported affirmative defense of arbitration:

> "Upon information and belief, plaintiff and/or each and every member of the putative class may be contractually obligated to arbitrate any dispute, claim or controversy which arises out of the subject matter set forth in the instant litigation."

(Dkt. 40). It is not clear from Defendants' answer whose claims, if anyone's, were subject to arbitration, nor could this affirmative defense be seen as a demand to arbitrate.

Defendants waited over eight months to first raise the issue that Mr. Huser might be subject to an arbitration clause. But even then, Defendants failed to establish that the September 5, 2009 Juniper Agreement had any relationship to Plaintiff Huser and seemed to altogether abandon its application. Additionally, Defendants have yet to provide any justification for the delay or why they waited nearly nine months raise the possibility of arbitration and yet another year before actually asserting it. Therefore, the court should hold that Defendants have not acted diligently in asserting their demand for arbitration and deny this motion.

8

There are no "extraordinary circumstances" in this case that rebut the presumption that Defendants' invocation of the judicial process to decide the merits of this case give rise to waiver of any right it might have had to arbitrate. *See Cabinetree*, 50 F.3d at 391. Among other things, Defendants have not demonstrated that it acted diligently in pursuing arbitration, that it has done "all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." *Id.*

Defendants have made *no* attempt whatsoever to explain why it took over a year and a half since Plaintiff was included in this litigation. Therefore, this Court should deny Defendants' motion to compel arbitration as waived and untimely.

### B. Defendants Acted Inconsistently with Any Right to Arbitrate by Substantially Engaging in Litigation and Delaying Seeking to Compel Arbitration.

The totality of Defendants actions in the seventeen months since Plaintiff Huser asserted its claims against Defendants gives rise to the presumption that Defendants have waived any right to compel arbitration.

The Seventh Circuit has held that an election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate. *Cabinetree* at 390. ("Although not compelled by our previous cases, this presumption is consistent with them; for we have deemed an election to proceed in court a waiver of a contractual right to arbitrate, without insisting on evidence of prejudice beyond what is inherent in an effort to change forums in the middle (and it needn't be the exact middle) of a litigation.").

The facts here are analogous to that of *Cabinetree,* in which the defendant removed the case to federal court, participated in six months of pretrial activities, including voluminous document productions, before moving to compel arbitration just five months before trial. *Id.* at 389–91. Based on the defendant's combined actions, the Court held that the defendant had

9

implicitly waived its right to arbitrate the dispute. *Id.*; *see also Ernst & Young,* 304 F.3d at 757 (explaining how the *Cabinetree* defendant's participation in adversary proceedings in litigation was a manifestation of intent to forego arbitration) Similarly, here, Defendants' delay is "powerful evidence that [it] elected to proceed in a judicial forum." *Pennsylvania Chiropractic Association v. Blue Cross Blue Shield Association*, Case No. 09 C 5619, 2011 WL 210805 (N.D. Ill).

Defendants have acted inconsistently with an intent to arbitrate the case. Defendants' primary argument against waiver of their arbitration clause is their continued refusal to issue discovery in the case. Since filing an answer in the case, but before first asserting the right to arbitrate, Defendants have responded to Plaintiff's first discovery requests, drafted and entered into a protective order, engaged in motion practice, attempted to have Plaintiff's claims brought before a jury and offered to have a judgment entered by this Court against them, in exchange for an individual settlement with Plaintiff. Further, Defendants have elected to participate in two settlement conferences before two different magistrate judges in an attempt to reach a class-wide settlement which would be overseen by this Court. Leading up to, and in between the settlement conferences the parties made multiple exchanges in settlement correspondence, including drafting and sending official settlement position letters and numerous settlement exchanges via email.

Not once during all of these proceedings did Defendants seek to compel arbitration. Rather, Defendants answered three separate complaints, made offers of judgments to the Plaintiffs and even when that failed, instead of filing a motion to compel arbitration, Defendants instead decided to litigate whether Plaintiffs' claims should be before a jury or this Court.

Defendants' late attempt to assert the right for a jury trial particularly demonstrates an intent to litigate rather than arbitrate this dispute. A request for jury demand is a request to have the case heard ***in Court***, ***by a jury***, and is entirely inconsistent with arbitration.

10

Having lost their attempt to assert an untimely jury demand, Defendants now find it convenient to assert this arbitration clause. However, Defendants should not be allowed to continue to play games with this litigation. This Court's opinion striking Defendants untimely jury demand illustrates Defendants continued attempts to delay the litigation, prejudicing Plaintiff in the process. (Dkt. 91). In that opinion, this Court held that Defendants' untimely jury demand, with no adequate justification, "smacks of brinksmanship" and "given the 13-month delay and defendants' representations that settlement-related considerations animated their decision not to demand a jury trial, the delay must be deemed prejudicial to plaintiffs here because defendants' posture on a jury trial in this action may have affected those discussions…" (Dkt. 91 Pg. 9-10). This motion is nothing more than continued brinksmanship by Defendants having lost the right to a jury trial. The court should find that Defendants actions in the litigation are not consistent with an intent to arbitrate and deny their motion to compel arbitration.

In this case, Defendants clearly and unequivocally waived their right to arbitrate this case in both their answer to the original complaint, their affirmative statement in the Joint Initial Status report, both of which were filed and signed Defendants, and their continued participation in discovery, settlement conferences and their defense of this litigation. Defendants were given multiple opportunities to compel arbitration in this case and chose not to. It was not until after Defendants untimely jury demand was struck that Defendants decided to change course. No inference is needed by the court to see Defendants have clearly and unequivocally waived any right to compel arbitration.

"The Seventh Circuit has frowned upon such a 'heads I win, tails you lose' approach to litigation." *Banc of Am. Sec. LLC v. Independence Tube Corp.*, 09C7381, 2010 WL 1780321 (N.D. Ill. May 4, 2010) *See also, Welborn Clinic,* 301 F.3d at 637 ("Litigating a claim is clearly

11

inconsistent with any perceived right to arbitration; we do not want parties to forum shop, taking a case to the courts and then, if things go poorly there, abandoning their suit in favor of arbitration."); *Cabintree,* 50 F.3d at 391 (finding that a defendant had waived its right to arbitrate by removing a case to federal court, causing the plaintiff to produce two thousand documents, and waiting roughly nine months before moving to stay pending arbitration); *St. Mary's Med. Ctr.,* 969 F.2d at 587 ("A party may not normally submit a claim for resolution in one forum and then, when it is disappointed with the result in that forum, seek another forum.").

Plaintiffs have incurred a significant amount of time and expense litigating this case and engaging in extensive discovery. *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Products, Inc.,* 660 F.3d 988, 994 (7th Cir. 2011) ("Though we do not require a showing of prejudice to find waiver, it is a relevant factor in the totality-of-the-circumstances analysis"). The record in this case fails to support any valid reason to rebut the legal presumption that Defendants waived its right to arbitration in this case. This decision was not a result of error, but an explicit decision to pursue litigation.

## II. PLAINTIFF'S CLAIMS AGAINST DEFENDANTS ARE EXPLICITLY EXCLUDED FROM THE ARBITRATION PROVISION AND DEFENDANTS ARE NOT ENTITLED TO ENFORCE IT

Even if the court finds that defendants have not waived the right to arbitrate by their extensive participation in the litigation, the court should deny Defendants' motion because they cannot enforce the arbitration agreement as written.

Plaintiff cannot be required to submit his dispute with Defendants to arbitration unless it is established that she agreed to do so. *AT&T Tech. Inc.* v. *Communication Workers,* 475 U.S. 643, 648 (1986). It is well settled that "arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *AT&T Tech. Inc.* v.

*Communication Workers,* 475 U.S. 643, 648 (1986) *("AT&T").* The question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator. *Id.* at 649. "Accordingly, the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chlysler-Plymouth,* 473 U.S. 614, 626 (1985). State law applicable to contracts generally governs whether an agreement to arbitrate exists. 9 U.S.C. ' 2; *Perry v. Thomas,* 482 U.S. 483, 492 n. 9 (1987).

In this case, it is undisputed that no express agreement to arbitrate exists between Plaintiff and Defendants. The arbitration provision upon which Defendants rely specifically excludes claims asserted against Defendants (an unaffiliated third-party assignee):

> "This arbitration agreement applies to all Claims now in existence or that may arise in the future ***except for Claims by or against any unaffiliated third party to whom ownership of your account may be assigned***, in which case this arbitration agreement will apply only if you or the third party chose arbitration."

Exhibit 6. Emphasis added. The agreement, by its own terms explicitly excludes Defendants, from invoking this arbitration clause. Defendants are not signatories or parties to this original agreement. Thus, they are an unaffiliated third party who was assigned ownership of the account. As an unaffiliated third-party Defendants could only bring this case to arbitration if either Plaintiff Huser or Defendants chose arbitration. Plaintiff did not choose arbitration as he filed an affirmative action in this court. As explained above, Defendants active participation in the litigation and continuous delays in bringing forth a motion for arbitration demonstrate Defendants did not choose arbitration either. Only once the litigation had progressed to a point where Defendants felt the need to move for arbitration rather than litigate the case did they move for arbitration. This is not allowed under the terms of the arbitration agreement as written and thus Defendants should not be allowed to enforce an arbitration clause that does not apply to them.

13

**CONCLUSION**

For the reasons stated above, that Defendants have waived the right to arbitrate this claim based on the active participation in the litigation, because Defendants do not have the right to enforce the agreement, and because Defendants have not met the burden of proof necessary to demonstrate that the terms of the attached agreement apply to Plaintiff Huser's account, this Court should deny Defendants' motion to compel arbitration of Plaintiff Huser's claims.

        Respectfully submitted,

        *s/Paul M. Waldera*
        Paul M. Waldera
        Attorney for Plaintiff

Daniel A. Edelman
Cassandra P. Miller
Paul M. Waldera
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## **CERTIFICATE OF SERVICE**

      I, Paul M. Waldera, hereby certify that on Friday, February 8, 2019 I caused a true and accurate copy of the foregoing document to be filed via the courts CM/ECF online system, which sent notice via email to all counsel of record.

                                                                        s/ Paul M. Waldera
                                                                        Paul M. Waldera

Daniel A. Edelman
Cassandra P. Miller
Paul M. Waldera
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)