**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JONATHAN HUSER, and STEPHEN WELCH on behalf of themselves and the class members described below, | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| MIDLAND FUNDING, LLC; MIDLAND CREDIT MANAGEMENT, INC. and ENCORE CAPITAL GROUP, INC., | ) ) ) ) |
| Defendants. | |

Case No. 17-cv-04490

Judge Joan B. Gottschall

**<u>MEMORANDUM OPINION AND ORDER</u>**

Defendants Midland Credit Management, Inc., Midland Funding LLC, and Encore Capital Group, Inc., move to compel arbitration of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., claims of one of the two plaintiffs in this putative class action, Jonathan Huser ("Huser"). Huser and Welch respond that defendants have waived their right to compel arbitration by participating in this case and that his claims are outside the scope of the applicable arbitration clause. For the following reasons, the court grants the motion to compel.

**I. Background**

Defendants seek to enforce an arbitration clause in a credit card member agreement ("agreement") between Huser and Juniper Bank Delaware ("Juniper"). *See* "Agreement 1," ECF

1

No. 96-2 Ex. 3 to Mulcahy Aff. at 11-12. The paragraph beneath the heading "Arbitration"

reads[1]:

> Any claim, dispute or controversy ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or your Account, or any transaction on your Account including (without limitation) Claims based on contract, tort (including intentional torts), fraud, agency, negligence, statutory or regulatory provisions or any other source of law and Claims regarding the applicability of this arbitration clause or the validity of the entire Agreement, shall be resolved exclusively and finally by binding arbitration under the rules and procedures of the arbitration Administrator selected at the time the Claim is filed. The Administrator selection process is set forth below For purposes of this provision, "you" includes any authorized user on the Account, agents, beneficiaries or assign of you; and "we" or "us" includes our employees, parents, subsidiaries, affiliates, beneficiaries, agents and assigns. Claims made and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual basis, **not** on a class or representative basis.

ECF No. 96-2 at 12 (excerpt containing this language) (emphasis in original); ECF No. 102-1

Ex. 1 at 5 (same); *see also* ECF No. 103-1 Ex. 7 at 9 (containing additional terms of arbitration

clause).

### A. **Juniper Changes Its Name; Defendants Purchase Huser's Account**

Except where otherwise noted, Huser does not dispute the following facts. Huser opened

the consumer credit card account at issue here with Juniper on February 7, 2006. Aff. of Sean

Mulcahy ¶ 14, ECF No. 96-2; Aff. of Matt Hadfield ¶ 5, ECF No. 96-4. Juniper renamed itself

Barclay's on May 25, 2006. ECF No. 96-1 Ex. A at 1. Barclay's sold Huser's account to

defendants as one of a group of allegedly delinquent accounts on December 14, 2012. Mulcahy

Aff. ¶ 8; Hadfield Aff. ¶¶ 7, 9; Aff. of Keith Walch ¶ 4, ECF No. 96-3 Ex. C.

---

[1] The agreement contains an exception allowing a party to "pursue a Claim within the jurisdiction of the Justice of the Peace Court in Delaware, or the equivalent court in your home jurisdiction." ECF No. 96-2 at 12. Huser does not suggest that this exception applies.

### B. **Procedural History**

The plaintiffs here allege that the defendants sent them misleading form dunning letters seeking to collect credit card debts. *See* 2d Am. Compl. ("SAC") ¶¶ 24–35, ECF No. 59. Huser's claims stem from a collection letter dated March 8, 2017. SAC Ex. A., ECF No. 59-1.

The original complaint filed June 14, 2017, named Mary T. Janetos ("Janetos") as the sole plaintiff. ECF No. 1. Defendants did not answer the original complaint before it was amended on July 20, 2017 ("First Amended Complaint" or "FAC"). The FAC added Huser as a plaintiff, *see* ECF No. 22 at 1.

Defendants answered the FAC on August 30, 2017. ECF No. 40. They asserted as an affirmative defense that "[u]pon information and belief" the plaintiffs' claims "may be" subject to a binding arbitration clause. *Id.* at 16. Janetos voluntarily dismissed her claims that same day, August 30, 2017, leaving Huser as the sole plaintiff. The period of court-authorized discovery began in September 2017. *See* Minute Entry, Sept. 8, 2017, ECF No. 46. In pre-discovery correspondence, defendants' lawyer agreed to begin discovery so long as it was clear that defendants' claim of arbitrability was not waived. *See* ECF No. 103-2, Ex. B. As the parties proposed, the court set August 31, 2018, as the deadline to complete fact discovery. *Id.* Huser served written discovery requests in October 2017, and defendants responded on December 8, 2017. Resp. to Mot. to Compel Arb. 2, ECF No. 102; Reply 10, ECF No. 103. For their part, defendants represent (this appears to be undisputed) that they have not "initiated any discovery." Mot. to Compel Arb. 4, ECF No. 96.

Defendants have been negotiating with Huser about the arbitration of his claims since at least April 2018. Mot. to Compel. Arb. 4 (citing ECF No. 90 at 4). Correspondence between counsel confirm this. *See* ECF No. 102-1 Ex. 5 at 15-18 (email thread recorded in message dated

3

Apr. 12, 2018). Plaintiffs' lawyer expressed confusion about the fact that the agreement involved Juniper rather than Barclay's, responding that defendants would need to provide an affidavit before Huser would agree to arbitrate his claims. *See id.* at 2. One was immediately provided.

Instead the parties attempted to settle this and three other cases pending in this court from July–September 2018. Plaintiffs filed a motion in *Pierre v. Midland Credit Management, Inc.*, No. 16-CV-2895, ECF No. 127 (N.D. Ill. July 5, 2018), to reassign this and three other cases for the purpose of holding a settlement conference before a magistrate judge. Judge Leinenweber entered and continued the motion but ordered the parties in the four cases to attend the settlement conference. In anticipation of that conference, the parties here jointly moved this court to "set a new discovery schedule after settlement negotiations conclude." ECF No. 73 at 4. This court granted that motion. ECF No. 76.

Conferences were held in July and September 2018, but they did not produce a settlement, *see* Minute Entry, Sept. 27, 2018, ECF No. 88. Plaintiffs withdrew their motion to reassign this case on October 3, 2018. Minute Entry, *Pierre*, No. 16-CV-2895, ECF No. 138. The record shows that two things happened while settlement efforts were ongoing. First, defendants sent Huser an offer of judgment, *see* Fed. R. Civ. P. 68, on July 30, 2018. ECF No. 102-1 Ex. 6 at 20. Second, Huser sought and obtained leave to filed his second amended complaint ("SAC") on July 12, 2018. The SAC added Stephen Welch ("Welch") as a named plaintiff. *See* ECF No. 59 at 1. Defendants answered the SAC, ECF No. 80, on August 23, 2018. For the first time in this case, the answer demanded a jury trial.

Plaintiffs moved to strike defendants' jury demand on September 5, 2018. This court granted the motion on November 2, 2018, ECF No. 91. *See* Order 3–11, ECF No. 91.

Defendants then filed the pending motion to compel arbitration in December 2018. ECF No. 96 (Dec. 17, 2018).

## II. The Federal Arbitration Act

The Federal Arbitration Act (FAA) provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "places arbitration contracts 'on equal footing with all other contracts[;]'" no more, no less. *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011) (quoting same source). Once the court is "satisfied that issue the involved in [a] suit or proceeding is referable to arbitration," the court must, "on application of one of the parties stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3; *accord Achey v. BMO Harris Bank, N.A.*, 64 F. Supp. 3d 1170, 1175 (N.D. Ill. 2014) (citing *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 786 (N.D. Ill. 2011)).

Three elements must be present before a court can compel arbitration: "[1] a written agreement to arbitrate, [2] a dispute within the scope of the arbitration agreement, and [3] a refusal to arbitrate." *Pearson v. United Debt Holdings, LLC*, 123 F. Supp. 3d 1070, 1073 (N.D. Ill. 2015) (quoting *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005)) (brackets in original). Analysis of whether these elements exist "mirrors summary judgment analysis." *Id.* (citing *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002)); *see also* 9 U.S.C. § 4; *Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 1001 (N.D. Ill. 2013) ("[T]he party opposing compelled arbitration will fail if there is no genuine issue as to any material fact and

5

the moving party is entitled to a judgment as a matter of law." (internal quotation marks, ellipsis, and citation omitted)).

### III. Analysis

In opposing defendants' motion, Huser effectively concedes that the three requirements of compelling arbitration are present . Huser of course refuses to arbitrate, satisfying the third element, and he does not suggest that the credit agreement is unenforceable.[2] Neither does he deny that defendants, as successors by assignment, can enforce the agreement.

That leaves the question whether the dispute falls within the arbitration clause's scope. Huser's scope argument merges with his waiver arguments. He points to this language in the agreement: "This arbitration agreement applies to all Claims now in existence or that may arise in the future except for Claims by or against any unaffiliated third party to whom ownership of your account may be assigned, in which case this arbitration agreement will apply *only if you or the third party chose arbitration*." Agreement 1; ECF No. 102-1 Ex. 7 at 23 (emphasis added). Huser argues that defendants' "active participation in the litigation and continuous delays in bringing forth a motion for arbitration" demonstrate that defendants did not choose arbitration.

---

[2] The briefing can be read as evincing some disagreement about what state law governs formation of the contract between Juniper and Huser. The court does not need to settle that issue. The agreement contains a choice of law clause selecting Delaware law, and defendants argue that Delaware law contract formation principles govern. Mot. to Compel Arb. 12. Huser does not discuss formation at all, but he cites Illinois cases articulating general contract interpretation principles. *See* Resp. 5, ECF No. 102. "[S]tate law" . . . is applicable to determine which contracts are binding under § 2 and enforceable under § 3 [of the FAA] "*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009) (quoting *Perry v. Thomas*, 482 U.S. 483, 493, n.9 (1987)) (brackets and italics in original; other citations omitted). A choice of law provision generally does "not extend to the arbitration clause, absent specific evidence the parties intended it to do so." *Williams-Bell v. Perry Johnson Registrars, Inc.*, 2015 WL 6741819, at *4 (N.D. Ill. Jan. 8, 2015) (Gottschall, J.) (quoting *Wal–Mart Stores, Inc. v. Helferich Patent Licensing, LLC*, 2014 WL 2795827, at *3 (N.D. Ill. June 17, 2014)). This court has concluded that enforcing a choice of law clause to settle a formation dispute would assume the answer to the question whether a contract was formed at all. *Nucap Indus., Inc. v. Robert Bosch LLC*, 273 F. Supp. 3d 986, 1006 (N.D. Ill. 2018) (Gottschall, J.) (citing *Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 2008 WL 687224, at *3 (N.D. Ill. Mar. 7, 2008) (Gottschall, J.)). Because plaintiffs concede here that the agreement is enforceable, the choice of law clause presents no "chicken and egg" problem. And because the parties have not identified any dispositive differences between Illinois and Delaware law, a choice of law analysis is unnecessary. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809 (7th Cir. 2011) (citing *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 734 n.8 (7th Cir. 2005) (collecting cases and stating that "[w]here the parties have not identified a conflict between the two bodies of state law that might apply to their dispute, we will apply the law of the forum state." (quoting *Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 n.7 (7th Cir. 1993)).

Resp. to Mot. to Compel Arb. 13, ECF No. 102 (incorporating waiver argument by reference). The waiver question is therefore the sole dispositive issue.

The federal courts of appeals have split over whether the court or an arbitrator should decide questions of waiver by participation in litigation, and the Seventh Circuit has not provided consistent guidance. *Smith v. Adams & Assocs.*, 2015 WL 5921098, at *3 (N.D. Ill. Oct. 9, 2015) (Gottschall, J.) (citing *Martinez v. Utilimap Corp.*, 2015 WL 3932151, at *8 (S.D. Ill. June 25, 2015)); *see also generally Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 65–66, 72 (2010). In their reply, defendants argue that the arbitrator should decide the waiver issue here.

Another waiver principle bars the court from reaching this issue. Arguments raised for the first time in a reply brief are waved. *See United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 843 (7th Cir. 2018) (citing *Hess v. Reg–Ellen Mach. Tool Corp.*, 423 F.3d 653, 665 (7th Cir. 2005); *UIRC–GSA Holdings Inc. v. William Blair & Co.*, 289 F. Supp. 3d 852, 863 (N.D. Ill. 2018) (citation omitted). This court sees no need to venture into an unsettled area of law without full adversary briefing on the issue. *See Adams & Assocs.*, 2015 WL 5921098, at *3 (citing *Martinez*, 2015 WL 3932151, at *8).

### B. Forfeiture By Participating in Litigation

The right to arbitrate, like any contractual right, may be waived or forfeited. *Smith v. GC Servs. LP*, 907 F.3d 495, 498–99 (7th Cir. 2018); *Dickinson v. Heinold Secs., Inc.*, 661 F.2d 638, 641 (7th Cir. 1981) ("a waiver of arbitration is not lightly to be inferred"). Many cases speak in terms of express and implied waivers, but the Seventh Circuit in *Smith* stated that those two ideas are better conceptualized as waiver and forfeiture, respectively. *See Smith*, 907 F.3d at 498–99 (citing *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prod., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011). "Forfeiture 'is the failure to make the timely assertion of a right,' while 'waiver

7

is the 'intentional relinquishment or abandonment of a known right.'" *Smith*, 907 F.3d at 499 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).

Huser invites the court to infer from defendants' participation in this and related litigation that they lost their right to arbitrate. Resp. to Mot. to Compel Arb. 6–15, ECF No. 102. Using *Smith's* terminology, Huser raises a forfeiture argument. *See Smith*, 907 F.3d at 499. As "the party resisting arbitration," Huser "bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (citations omitted). The ultimate question is whether "the totality of the circumstances" demonstrates that the "party acted inconsistently with the right to arbitrate." *Smith*, 907 F.3d at 499 (quoting *Kawasaki*, 660 F.3d at 994). Of the factors considered, "diligence or the lack thereof is particularly important." *Id.* (citing *Kawasaki*, 660 F.3d at 994). Other relevant factors include whether the party seeking to enforce an arbitration clause "participated in litigation, substantially delayed its request for arbitration, or participated in discovery" and whether the party opposing arbitration "was prejudiced by its reliance on the litigious behavior of the waiving party. . . ." *Kawasaki*, 660 F.3d at 994 (citing *St. Mary's Med. Ctr. of Evansville v. Disco Aluminum Prods. Co., Inc.*, 969 F.2d 585, 589–91 (7th Cir. 1992)).

Defendants cite *Knorr Brake Corp. v. Harbil, Inc.*, 556 F. Supp. 489, 493 (N.D. Ill. 1983), for the proposition that prejudice is required to find waiver. Reply 13. But the Seventh Circuit has long held that prejudice should be weighed like any other factor; "a court may find waiver even if [the actions of the party seeking to arbitrate] did not prejudice the non-defaulting party." *St. Mary's*, 969 F.2d at 590; *see also Smith*, 907 F.3d at 501 (collecting additional cases). Considering the unique procedural history of this case and the related settlement proceedings in

*Pierre*, the court concludes that defendants have not acted so inconsistently with the right to arbitrate that a forfeiture finding is warranted.

The court begins with defendants' explanation for the delay in seeking to arbitrate. Defendants first submit that the delay resulted from their lawyer's lack of access to needed documents in the hands of third parties. *See* Reply 11–12. Defendants emphasize that they have not filed any motions or propounded discovery requests. *Cf. Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 389–90 (7th Cir. 1995) (affirming waiver finding where defendant sent voluminous discovery requests over six-month period). Although defendants responded to Huser's discovery request, correspondence from their counsel dating to the outset of discovery expressly preserved their position that Huser's claims were arbitrable. *See* ECF No. 103-2 Ex. B at 2 (agreeing to begin discovery "[s]ubject to the caveat (that we have maintained throughout) that Huser is party to an arbitration agreement (and class waiver provision) . . . .")

Given counsel's careful reservation of the issue early in the case and subsequent developments, it would stretch credulity to find that counsel was unable to gather the necessary documents to file a motion to compel for over a year. Defendants cite a number of cases in which counsel could not with reasonable diligence have discovered that a contract contained an arbitration clause. *See Leff v. Deutsche Bank AG*, 2009 WL 1380819, at \*3 (N.D. Ill. 2009); *Khalid Bin Alwaleed Found. v. E.F. Hutton & Co, Inc.*, 1990 WL 17143, at \*4 (N.D. Ill. Feb. 1, 1990) (defendant moved to arbitrate two months after agreement was produced to it). Unlike those cases, lawyers for the defendants here said that Huser's claims were arbitrable at the outset of discovery, yet defendants do not account for their inaction over the next five months. *See* Reply 9–10 (timeline of events). Defendants' timeline of events makes clear that five months was more than enough time to move to compel. Once settlement negotiations broke down nearly

a year later in October 2018, defendants obtained the affidavits and records presently before the court within two months. *See id.* If defendants wished to avoid the expense of responding to discovery at the case's outset in 2017, why not move to compel arbitration? The record offers no answer.

The Seventh Circuit confronted a similar situation in *Smith*, *supra*, where the defendant attributed a five-month delay in moving to compel to the difficulty of obtaining affidavits from the bank that originated the plaintiff's debt: "GC Services has not provided any information regarding its efforts to obtain this minimal documentation from Synchrony Bank. Did GC Services request it once or many times? When was the information first requested? We can only guess." *Smith*, 907 F.3d at 500. The defendants here leave the court guessing with similar questions and no adequate explanations.

Nonetheless, the settlement proceedings in the *Pierre* litigation adequately explain defendant's failure to move to compel beginning in March 2018. Defendant's counsel asserts that it would "have made absolutely no sense" to bring a motion to compel during those lengthy and complex proceedings. ECF No. 103 at 14. Defendants' lawyer's correspondence sent in April 2018 (along with a copy of the agreement is consistent with that assertion). The lawyer stated that he hoped to avoid the costs of locating affidavits and leave more money for a potential settlement. *See* ECF No. 102-1 5, Ex. 5 at 15.

The Seventh Circuit has provided guidance for factoring settlement negotiations into the forfeiture analysis. In short, the FAA discourages forum shopping: "[a] party may not normally submit a claim for resolution in one forum and then, when it is disappointed with the result in that forum, seek another forum." *Smith*, 907 F.3d at 500 (quoting *St. Mary's*, 969 F.2d at 589). Pursuing settlement negotiations does not implicate this sort of "play heads I win, tails you lose"

approach to arbitration on which the courts frown. *Id.* at 502 (quoting *Cabinetree*, 50 F.3d at 391). Indeed, the Seventh Circuit has explained in a closely related context that "[p]reliminary negotiations concerning a settlement are not sufficient to waive arbitration . . . . Significant periods of delay prior to the onset of litigation are often necessary to allow the parties to engage in good faith efforts to resolve the controversy without reference to an adjudicatory body." *Dickinson*, 661 F.2d at 641. "The delay in *Dickinson* took place prior to the filing of the lawsuit. There is nothing in the opinion that would suggest that this conclusion should not also be extended to settlement efforts after the suit has been filed especially when those efforts take place in court." *Carbajal v. Household Bank, FSB*, 2003 WL 22159473, at *10 (N.D. Ill. Sept. 18, 2003); *see also Kawasaki*, 660 F.3d at 994. To hold otherwise would be to discourage private settlement by forcing a choice between settlement and arbitration that serves no useful purpose. *See Carbajal,* 2003 WL 22159473, at *10–12 (holding that two-year delay pending efforts to settle class action did not result in waiver); *see also Metro. Housing Dev. Corp. v. Vill. of Arlington Heights*, 616 F.2d 1006, 1013 (7th Cir. 1980) ("The law generally favors and encourages settlements." (citation omitted)).

Because the FAA does not discourage private settlements, the most important factor, diligence, militates against finding forfeiture here. *Smith*, 907 F.3d at 499 (citing *Kawasaki*, 660 F.3d at 994). Significantly, the parties indicated their intent to pause this case when they asked the court to suspend all discovery deadlines pending the *Pierre* negotiations. *See* ECF No. 73 at 4. Defendants made their offer of judgment during the negotiations. ECF No. 102-1 Ex. 6 at 20. As plaintiffs argue, offering to have the court enter judgment is generally inconsistent with an intent to arbitrate. *See Smith*, 907 F.3d at 501 (explaining that "a motion seeking a determination that the plaintiff's legal theory does not state a claim is evidence of waiver because success by

the defendant ends 'the case just as surely as a judgment entered after a trial'") (quoting St. Mary's, 969 F.2d at 589)).  Here, however, the court finds that in context the offer of judgment represented a step in settlement negotiations.  In the unique posture of this case, treating the offer as a forfeiture of the right to arbitrate would not further the purposes of the FAA.

The court also finds little, if any, prejudice inuring to Huser.  Although defendants could have acted more quickly before April 2018, if anything, the plaintiff benefited from receiving discovery responses during that period.  Huser also argues that he has been prejudiced by defending the motion to strike the jury demand in the second amended complaint.  But Huser invited the motion by adding Welch to the SAC during the negotiations efforts in *Pierre*. Defendants made clear in their response to the motion to strike that the jury demand was necessitated by Welch's addition because he, unlike Huser, may not have been subject to an arbitration clause.  *See* ECF No. 90 at 1.  This court did not find this argument persuasive when resolving the motion to strike , but Huser was not the focus of that motion.  *See* Order 9, ECF No. 91 (Nov. 2, 2018).  Moreover, the court reasoned that the absence of a jury demand may have affected the settlement negotiations, *id.* at 9–10.  As already explained, a similar analysis does not apply to forfeiture of the right to arbitrate.

In sum, an evaluation of the evidence the court now has before it leads the to the finding that Huser experienced minimal, if any, prejudice from defendants' initial five-month delay in moving to compel arbitration.  Considering the facts in their totality, Huser has not carried his burden to establish that defendants forfeited their contractual right to arbitrate this dispute. Defendant's motion must therefore be granted.

## C. Remedy

Defendants ask the court to compel Huser to arbitrate his claims on an individual basis and dismiss his class action claims.  The agreement contains specific language supporting their request, and Huser does not discuss this aspect of the motion in his response.  The agreement declares that "[c]laims made and remedies sought as part of a class action . . . are subject to arbitration on an individual basis, **not** on a class action or representative basis."  ECF No. 96-2, Ex. 3 to Mulcahy Aff. at 12 (emphasis in original).  Arbitration clauses waiving the right to proceed on a class-wide basis must be enforced according to their terms; the FAA does not permit courts to invalidate arbitration agreements because they preclude class-wide arbitration of a federal law claim.  .  *Am. Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228, 232–39 (2013); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).  Because there is no doubt that the arbitration clause covers Huser's class claims, the court compels individual arbitration.[3]

## IV. Conclusion

For the reasons stated, the court concludes that defendants have not waived or forfeited their contractual right to arbitrate this dispute.  The motion to compel is granted.  Huser is ordered to arbitrate his claims on an individual basis.  His claims in this court are stayed.

Date:   September 13, 2019                      _____/s/_____
                                               Joan B. Gottschall
                                               United States District Judge

---

[3] The situation would be different if the clause did not mention class actions expressly or another similar question about whether the class claims fell within the arbitration clause's scope was presented.  After surveying the governing Supreme Court and Seventh Circuit authority, this court determines that an arbitrator, not the court, should decide whether class claims fall within an ambiguous arbitration clause's scope.  *Williams-Bell*, 2015 WL 6741819, at *6–8 (N.D. Ill. Jan. 8, 2015) (Gottschall, J.) (relying primarily on *Price v. NCR Corp.*, 908 F. Supp. 2d 935, 941 (N.D. Ill. 2012)).